UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FRANK RODRIGUEZ, <br><br> Plaintiff, <br><br> v. <br><br> LEHIGH SOUTHWEST CEMENT COMPANY, et al., <br><br> Defendants. | Case No.: 14-CV-03537-LHK <br><br> **ORDER GRANTING IN PART MOTIONS TO DISMISS, AND QUASHING SERVICE** |

Before the Court are two motions to dismiss filed jointly by Defendant International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers, and Helpers ("IBB") and Defendant International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers, and Helpers Local Union CLG-100 ("Local CLG-100") (collectively, "Union Defendants"). Both motions seek dismissal of Plaintiff Frank Rodriguez's ("Plaintiff") lawsuit under Rule 12(b)(5) of the Federal Rules of Civil Procedure due to insufficient service of process. The first motion concerns Plaintiff's attempt to serve Union Defendants on November 14, 2014. ECF No. 20-1. The second motion concerns Plaintiff's attempt to serve Union Defendants on February 6, 2015. ECF No. 47.

1

Case No.: 14-CV-03537-LHK
ORDER GRANTING IN PART MOTIONS TO DISMISS, AND QUASHING SERVICE

The Court finds these matters suitable for decision without oral argument under Civil Local Rule 7-1(b) and hereby VACATES the motion hearings set for March 26, 2015, at 1:30 p.m. and July 9, 2015, at 1:30 p.m. The case management conference scheduled for April 29, 2015, at 2:00 p.m. remains as set. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court hereby GRANTS in part Union Defendants' motions to dismiss and QUASHES service as to Union Defendants.

## I.  BACKGROUND

Until his termination on October 25, 2012, Plaintiff was an employee of Defendant Lehigh Southwest Cement Company ("Lehigh").[1] ECF No. 1 ("Compl.") ¶ 3. As part of his duties for Lehigh, Plaintiff would inspect the heavy equipment used to produce concrete and report any safety hazards found therein. ECF No. 33 ("JCMS")[2] at 1. On October 15, 2012, a piece of machinery known as a roller press or "6RP1" caught fire, causing over $200,000 in damage. *Id.* at 2; Compl. ¶ 6. Plaintiff and two other employees were faulted for the fire, and Plaintiff was terminated. JCMS at 2. Plaintiff was singled out for termination, he claims, because he was known to document Lehigh's failure to maintain its equipment, and Lehigh feared that Plaintiff would notify the federal Mine Safety and Health Review Commission about the faulty equipment. Compl. ¶ 7. Plaintiff also claims that on February 6, 2014, Union Defendants, without Plaintiff's permission or consent, negotiated his reinstatement at Lehigh conditioned on terms that Plaintiff found objectionable. *Id.* ¶ 10. Plaintiff rejected the settlement and filed suit against Lehigh and Union Defendants on August 5, 2014. *Id.* In his complaint, Plaintiff asserts a cause of action for breach of collective bargaining agreement against Lehigh and a cause of action for breach of duty of fair representation against Union Defendants. *Id.* ¶¶ 11-19.

Since filing his complaint, Plaintiff has attempted to serve Union Defendants with process multiple times. First, Plaintiff served David Lawrence ("Lawrence") at 7720 Westridge, Raytown,

---

[1] Unlike Union Defendants, Lehigh has answered Plaintiff's complaint. *See* ECF No. 9.
[2] "JCMS" refers to the parties' joint case management statement submitted in advance of their January 28, 2015 initial case management conference.

2

Case No.: 14-CV-03537-LHK
ORDER GRANTING IN PART MOTIONS TO DISMISS, AND QUASHING SERVICE

Missouri 64138, a private residence. ECF No. 42-1 Exs. C-D. According to a letter Lawrence sent to Plaintiff on January 27, 2014, regarding Plaintiff's termination, Lawrence held two titles with IBB: "Director – Stove, Furnace, Energy Allied Workers Division Services" and "International Representative – Industrial Sector Operations." *Id.* Ex. A. The same titles appear on the "Contact Us" page of IBB's website under Lawrence's name. *Id.* Ex. B. After one failed attempt at service,[3] Lawrence was personally served at the 7720 Westridge address on November 14, 2014. *Id.* Ex. D.

On December 5, 2014, Union Defendants filed their first motion to dismiss, claiming that Plaintiff's service on Lawrence was legally insufficient. ECF No. 20-1 ("First MTD") at 4-11. Under the Civil Local Rules, Plaintiff's opposition was due on December 19, 2014. *See* Civ. L. R. 7-3(a). On February 5, 2015, Plaintiff filed a motion to enlarge time to file an opposition to Union Defendants' motion. ECF No. 39. Finding good cause for counsel's failure to meet the filing deadline, the Court granted Plaintiff's motion. ECF No. 41. Pursuant to the Court's order, Plaintiff filed his opposition on February 10, 2015. ECF No. 42 ("First Opp."). Union Defendants replied on February 17, 2015. ECF No. 43 ("First Reply").

Plaintiff's second attempt to serve Union Defendants with process occurred on February 6, 2015. This time, Plaintiff attempted service on J. Tom Baca ("Tom Baca") at 1401 Willow Pass Road, Suite 870, Concord, California 94520, the address that appears under Baca's name on IBB's website. ECF Nos. 45-1, 46-1, 48-2 Ex. B. Tom Baca, who was copied on Lawrence's letter of January 27, 2014, is listed on IBB's website as "International Vice President – Western Section." ECF No. 48-2 Exs. B-C. Tom Baca, however, was apparently not present at the 1401 Willow Pass Road address on February 6, 2015, so Plaintiff's process server left a copy of the summons and complaint with Tom Baca's twenty-eight-year-old son, Johnny M. Baca ("John Baca"). ECF Nos. 45-1, 46-1. John Baca says he told the process server that he did not know whether he could

---

[3] On October 1, 2014, service was attempted on Lawrence at the 7720 Westridge address. ECF No. 42-1 Ex. C. This attempt was unsuccessful, however, and Lawrence was said to be "unknown at the given address." *Id.*

3

Case No.: 14-CV-03537-LHK
ORDER GRANTING IN PART MOTIONS TO DISMISS, AND QUASHING SERVICE

accept the documents and gave the process server his business card indicating that he worked for an insurance company. ECF No. 47-2 ("John Baca Decl.") ¶ 3; *see* ECF No. 47-3 (image of John Baca's business card). The address and suite number on John Baca's business card is the same as the address and suite number listed under Tom Baca's name on IBB's website. *Compare* ECF No. 48-2 Ex. B (IBB website), *with* ECF No. 47-3 (business card).

On February 27, 2015, Union Defendants filed a renewed motion to dismiss, reiterating their argument as to Lawrence and claiming that Plaintiff's attempted service on Tom Baca was also insufficient as a matter of law. ECF No. 47-1 ("Second MTD") at 3-8. Plaintiff opposed the motion on March 13, 2015. ECF No. 48 ("Second Opp."). Union Defendants replied on March 20, 2015. ECF No. 49 ("Second Reply").

## II.  LEGAL STANDARD

District courts may dismiss a complaint for insufficient service of process. Fed. R. Civ. P. 12(b)(5). "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987); *see also Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 350 (1999) ("In the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant."). "Once service is challenged, plaintiffs bear the burden of establishing that service was valid under Rule 4." *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004). Importantly, "neither actual notice, nor simply naming the person in the caption of the complaint, will subject defendants to personal jurisdiction if service was not made in substantial compliance with Rule 4." *Crowley v. Bannister*, 734 F.3d 967, 975 (9th Cir. 2013) (brackets and internal quotation marks omitted).

Rule 4(h) governs service of unincorporated associations such as labor unions. Fed. R. Civ. P. 4(h). Pursuant to that rule, serviced may be effectuated on an unincorporated association "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." *Id.*

R. 4(h)(1)(B). In the Ninth Circuit, "service of process is not limited solely to officially designated officers, managing agents, or agents appointed by law for the receipt of process." *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988). Rather, service may be made upon any "representative so integrated with the organization that he will know what to do with the papers." *Id.* (internal quotation marks omitted). "Generally," the Ninth Circuit has said, "service is sufficient when made upon an individual who stands in such a position as to render it fair, reasonable and just to imply the authority on his part to receive service." *Id.* (internal quotation marks omitted).

Rule 4(h) also permits service of unincorporated associations in accordance with the law of the state in which the presiding federal court sits or where service is attempted—here, California and, with respect to Lawrence, Missouri as well. Fed. R. Civ. P. 4(h)(1)(A) (allowing for service as prescribed for individuals by Rule 4(e)(1), which refers to "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made"). Under California law, service on an unincorporated association may be accomplished "by delivering a copy of the summons and of the complaint . . . to the person designated as agent for service of process . . . or to the president or other head of the association, a vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, a general manager, or a person authorized by the association to receive service of process." Cal. Civ. Proc. Code § 416.40(b). The same may be done in Missouri "by delivering a copy of the summons and of the petition to an officer, partner, a managing or general agent, or by leaving the copies at any business office of the defendant with the person having charge thereof, or to any other agent authorized by appointment or required by law to receive service of process." Mo. Ann. Stat. § 506.150.

### III. DISCUSSION

In their first motion to dismiss, Union Defendants argue that Plaintiff's November 14, 2014 attempt to serve them with process was insufficient under Rule 4(h), Ninth Circuit precedent,

5

Case No.: 14-CV-03537-LHK
ORDER GRANTING IN PART MOTIONS TO DISMISS, AND QUASHING SERVICE

California law, and Missouri law because Lawrence is not an "agent" expressly or impliedly authorized to receive service of process on behalf of either IBB or Local CLG-100. First MTD at 4-10; First Reply at 3-7. Union Defendants argue further that any subsequent attempts at service would be time-barred by Rule 4(m), which generally requires service within 120 days of filing the complaint. First MTD at 10-11.

In their renewed motion to dismiss, Union Defendants claim that Plaintiff's February 6, 2015 attempt to serve them with process was insufficient under Rule 4(h), Ninth Circuit precedent, and California law. This is so, Union Defendants argue, because the papers were left with Tom Baca's son, John Baca, who is neither an employee of IBB or Local CLG-100 nor an agent with apparent authority to accept service on behalf of either union. Second MTD at 3-8; Second Reply at 3-8. Union Defendants also claim that the attempted service on Tom Baca was time-barred under Rule 4(m). Second MTD at 8; Second Reply at 8-10.

The Court addresses each argument in turn.

**A. Service on Lawrence**

Plaintiff does not really dispute that for purposes of Rule 4(h) Lawrence was neither "a managing or general agent for either of the Defendant Unions" nor was Lawrence "authorized to accept service on behalf of either of the Defendant Unions." First Reply at 4. In fact, Plaintiff, who bears the burden here of establishing sufficient service, spends only one paragraph arguing that Lawrence was a proper individual to receive service on behalf of IBB. *See* First Opp. at 4. In that paragraph, Plaintiff asserts that Lawrence had implicit authority to accept service on behalf of IBB because "[a] reasonable person would conclude that David Lawrence is a representative so integrated within [IBB] that he would know what to do when he receives a summons and complaint." *Id.* The sole basis for Plaintiff's assertion is that "Lawrence holds the position of Director" for IBB and he "is prominently listed with the International Vice President, Executive Director and Assistant Directors, on the 'Contact Us' page of [IBB's] website." *Id.*

The Court is not persuaded. Plaintiff offers no basis for his conclusory assertion that

6

Case No.: 14-CV-03537-LHK
ORDER GRANTING IN PART MOTIONS TO DISMISS, AND QUASHING SERVICE

"Lawrence is a representative so integrated within [IBB] that he would know what to do when he receives a summons and complaint." First Opp. at 4. Simply parroting the language from *Direct Mail* is insufficient. Further, Plaintiff offers no response to Union Defendants' charge that Lawrence, as an "International Representative" for IBB, is expressly "not authorized" to receive service of process under IBB's constitution. First MTD at 6 (quoting IBB Const. art. 34.9).[4]

Specifically, Article 34.9 of the IBB constitution provides:

> *Only* the Officers of the International Brotherhood are authorized to be agents for service of processes. International Representatives, employees of the International Brotherhood, or officers and employees of subordinate bodies are *not authorized* to be agents of the International Brotherhood for service of processes under any circumstances.

*Id.* (emphases added). Plaintiff likewise does not dispute the statements of Tyler Brown, IBB's Executive Director of Industrial Sector Operations, who explained in his declaration that Lawrence "does not have any independent authority to act on behalf of the IBB," and that "elected officers are the only individuals authorized as agents for service of process." ECF No. 20-2 ¶¶ 1, 10, 12-13.[5]

The truth is Plaintiff's single paragraph cites no case law, offers no argument that Lawrence is an "agent" of IBB for purposes of Missouri or California law, and makes no attempt to show that Lawrence was in any way authorized to receive service on behalf of Local CLG-100,

---

[4] The Court takes judicial notice of IBB's constitution, which can be found at http://www.boilermakers.org/files/leadership/2011_IBB_Constitution.pdf. ECF No. 20-2 Attachment A. The Court may take judicial notice of facts not subject to reasonable dispute that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Moreover, publicly accessible websites are proper subjects of judicial notice. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010).

[5] To be fair, it is not entirely clear from the briefing how Lawrence's apparent other role as "Director" of "Stove, Furnace, Energy & Allied Workers Division Services" fits into IBB's constitutional structure. ECF No. 42-1 Ex. B. Nonetheless, assuming the phrase "Officers of the International Brotherhood" in Article 34.9 refers to the "International Officers" listed in Article 4.1, Lawrence's role as a division "Director" would still not make him authorized under IBB's constitution to accept service of process on behalf of the union. *See* IBB Const. art. 4.1 (listing only the "International President, International Secretary-Treasurer and seven (7) International Vice Presidents" as "International Officers").

7

Case No.: 14-CV-03537-LHK
ORDER GRANTING IN PART MOTIONS TO DISMISS, AND QUASHING SERVICE

a separate defendant in this case.  With respect to the latter point, the Ninth Circuit has explained that "the locals and the International are separate 'labor organizations' within the meaning of both the National Labor Relations Act and the [Labor-Management Reporting and Disclosures Act]." *United States v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989) (citation and internal quotation marks omitted); *accord In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999).  Other courts have found that where both an international union and a local affiliate are named as defendants in a lawsuit, service of process on one does not necessarily confer personal jurisdiction over the other.  *See, e.g.*, *Sullivan v. Potter*, No. CIV.A. 05-00818 HHK, 2006 WL 785289, at *2 (D.D.C. Mar. 28, 2006) (explaining that "the national and local affiliates of a union are not the same organization, and service of process on one does not effect service of process on the other" (citation omitted)); *Snipes v. Douglas Aircraft Co.*, No. CV 82-1918 MRP, 1983 WL 31072, at *2 (C.D. Cal. Apr. 29, 1983) ("Service of process on an autonomous local union is not sufficient to acquire personal jurisdiction over an international union with which the local union is affiliated.").  Again, Plaintiff offers no contrary authority.

For these reasons, the Court concludes that Plaintiff has failed to carry his burden of showing that service on Lawrence was sufficient.  *Brockmeyer*, 383 F.3d at 801.

### B. Attempted Service on Tom Baca

As to the attempted service on Tom Baca, IBB's "International Vice President" for the "Western Section," ECF No. 48-2 Ex. B, the Court agrees with Union Defendants that Plaintiff's service on John Baca, Tom Baca's son, was insufficient under governing law.  Plaintiff does not dispute that John Baca told the process server that he "did not know whether [he] could take" the papers on behalf of IBB.  John Baca Decl. ¶ 3.  Nor does Plaintiff dispute that John Baca gave the process server his business card, which "demonstrate[d] that [he] work[s] for Union Insurance Group," and not either union.  *Id.*  Instead, Plaintiff argues that service was sufficient under California law because "copies of the summons and complaint" were left "during usual office hours with" John Baca, "the person apparently in charge of the office."  Second Opp. at 3.

8

Case No.: 14-CV-03537-LHK
ORDER GRANTING IN PART MOTIONS TO DISMISS, AND QUASHING SERVICE

1  Plaintiff infers from John Baca's declaration that he was "apparently the <u>only</u> person in the office"
2  at the time of service, and that John Baca must be "an employee in some capacity" because his
3  declaration states only "that he is not a 'regular' employee" of IBB. *Id.* at 4 (quoting John Baca
4  Decl. ¶ 4). According to Plaintiff, those inferences, combined with the facts that the address and
5  suite number on John Baca's business card matched the address and suite number listed under
6  Tom Baca's name on IBB's website and that John Baca did not refuse to accept the documents,
7  "overwhelmingly support[] the fact that [John] Baca was the person in charge of the union office
8  on February 6, 2015." *Id.*

9  Plaintiff's arguments are unavailing. To start, Plaintiff relies on the wrong provision of
10 California law in support of his argument. *See* Second Opp. at 3 (citing Cal. Civ. Proc. Code
11 § 415.95). Section 415.95(a) of the California Code of Civil Procedure, which Plaintiff cites,
12 governs service of process on "business organization[s]" and allows for such service "by leaving a
13 copy of the summons and complaint during usual office hours with the person who is apparently
14 in charge of the office of that business organization." Cal. Civ. Proc. Code § 415.95(a). As stated
15 above, however, it is section 416.40(b) of the California Code of Civil Procedure that governs in
16 this case. *See Marshall v. Int'l Longshoremen's & Warehousemen's Union*, 371 P.2d 987, 988
17 (Cal. 1962) (describing a labor union as an "unincorporated association"); *see also Chapman v.*
18 *Teamsters Local 853* ("*Chapman I*"), No. C 07-1527SBA, 2007 WL 3231736, at *2 (N.D. Cal.
19 Oct. 30, 2007) (evaluating service of process to a labor union under Cal. Civ. Proc. Code
20 § 416.40(b)). Whether or not John Baca was "apparently in charge of the office" on February 6,
21 2015, is therefore irrelevant to the statutory analysis. Despite being put on notice repeatedly that
22 section 416.40(b) is the applicable provision, *see* First MTD at 4; Second MTD at 3-4, Plaintiff
23 makes no attempt to show, as he must, that John Baca was either "the person designated as agent
24 for service of process" or was "the president or other head of the association, a vice president, a
25 secretary or assistant secretary, a treasurer or assistant treasurer, a general manager, or a person
26 authorized by the association to receive service of process," Cal. Civ. Proc. Code § 416.40(b).

In any event, the evidence is to the contrary. In his declaration, John Baca states plainly that he is "not authorized to accept service of process for the Boilermakers." John Baca Decl. ¶ 4. Moreover, it is undisputed that John Baca told Plaintiff's process server on February 6, 2015, that he did not know whether he could accept service on behalf of IBB and that he was an employee of Union Insurance Group. *Id.* ¶ 3. John Baca states further in his declaration that he is "not a regular employee of the Boilermakers" and that he "did not perform any duties for [them]." *Id.* ¶ 4. Plaintiff's attempt to parse the latter statement as an implicit admission that John Baca is in fact "an employee in some capacity" is unsupported by any other evidence. Second Opp. at 4. Rather, the evidence is that John Baca is an employee of Union Insurance Group, that he told Plaintiff's process server as much, and that John Baca is therefore not authorized to receive service on behalf of IBB. John Baca Decl. ¶¶ 3-4; IBB Const. arts. 4.1, 34.9; *see also* ECF No. 47-3 (image of John Baca's business card).

In the alternative, Plaintiff argues that service on John Baca was sufficient under Ninth Circuit precedent because John Baca "is a person who stands in such a position to the union that it is fair, reasonable, and just to imply the authority on his part to receive service." Second Opp. at 4 (citing *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685 (9th Cir. 1988)). "Also," Plaintiff continues, "the fact that [John] Baca voluntarily accepted the document shows that he is a person so integrated within the union organization that he would know what to do with the papers." *Id.* (citing *Allphin v. Peter K. Fitness, LLC*, No. 13-CV-01338-BLF, 2014 WL 2961088, at *2-4 (N.D. Cal. June 30, 2014)).

Neither case supports Plaintiff's position. In *Direct Mail*, the plaintiff served the receptionist of a small company on its first attempt at service. 840 F.2d at 687. The receptionist, an employee of the small company, was the only person in the office when the process server arrived. *Id.* The process server asked the receptionist who was authorized to accept service on behalf of the company and was told that no one was available. *Id.* The process server left the complaint and summons with the receptionist and instructed her to give the documents to her

superiors. *Id.* After serving the receptionist, the process server mailed the documents to the company at the address served. *Id.* In light of these facts, the Ninth Circuit concluded that service was sufficient because the receptionist played a "commensurately large" role in the structure of the small company and was therefore someone who had "more than minimal responsibility" at the company. *Id.* at 688-89.

In *Jones v. Automobile Club of Southern California*, 26 F. App'x 740 (9th Cir. 2002), decided fourteen years after *Direct Mail*, the Ninth Circuit came out the other way in a case where the plaintiff attempted to serve the defendant corporation through a security guard. The court in *Jones* distinguished *Direct Mail* on the basis that the Automobile Club of Southern California ("ACSC") "is not a small company and the security guard was not the only person working in ACSC's corporate offices when Jones' process server arrived." *Id.* at 743. Significantly, "the guard was a contract worker, not an ACSC employee," and he "expressly informed Jones' process server that he was not authorized to receive service." *Id.* "Under these circumstances," the Ninth Circuit concluded, "the facts that the guard controlled access to the building and personally delivered the documents to the corporate counsel the next day do not provide a sufficient basis for inferring that the guard had 'apparent authority' or 'more than minimal responsibility.'" *Id.* (quoting *Direct Mail*, 840 F.2d at 688 n.1, 689). Accordingly, the *Jones* court affirmed the district court's dismissal of the plaintiff's lawsuit for insufficient service of process. *Id.* at 744.

As in *Jones*, "[t]he differences between this case and *Direct Mail* are greater than the similarities." 26 F. App'x at 743. For one, there is no evidence that IBB, an international union, is a small association. *See Direct Mail*, 840 F.2d at 688 (explaining that "[t]he company was a rather small one"). Critically, the evidence establishes that, unlike the receptionist in *Direct Mail*, John Baca is not an employee of the defendant the plaintiff was seeking to serve. John Baca Decl. ¶¶ 3-4. Although the court in *Direct Mail* hinted that "a recipient of process need not even be an employee of a company to be its managing agent, as long as the person demonstrates apparent authority," 840 F.2d at 688 n.1, whether or not the recipient is an employee is certainly relevant to

11
Case No.: 14-CV-03537-LHK
ORDER GRANTING IN PART MOTIONS TO DISMISS, AND QUASHING SERVICE

the analysis, *see Jones*, 26 F. App'x at 743 (emphasizing that the security guard "was a contract worker, not an ACSC employee"). Furthermore, despite Plaintiff's assertion, *see* Second Opp. at 4, it is not clear from the evidence that John Baca was the only person present at the 1401 Willow Pass Road address on February 6, 2015. What is clear, however, is that John Baca told Plaintiff's process server he did not know whether he could accept service. John Baca Decl. ¶ 4. On these facts, the Court concludes that the instant case is more like *Jones* than *Direct Mail*.

Other courts in this district have reached similar conclusions. In *Chapman I*, for example, Judge Armstrong granted a labor union's motion to quash service where "the papers served by the plaintiff were given to Lydia Pinedo, one of five Teamsters clerical employees," and the plaintiff had provided "no evidence that Pinedo was authorized to receive service, or that she was an officer, manager or other figure 'so integrated with the organization' that she would know what to do with the papers." 2007 WL 3231736, at *2-3 (quoting *Direct Mail*, 840 F.2d at 688). Judge Armstrong so held even though Pinedo had allegedly told the process server that "she *was* authorized to accept service on behalf of Teamsters." *Id.* at *3 (emphasis added). The record here, by contrast, shows that John Baca, who is not an employee of either union, explicitly told the process server that he "did not know whether [he] could take" the papers on behalf of IBB. John Baca Decl. ¶ 3. Plaintiff offers no evidence to dispute this account. The record in this case, thus, is even more compelling than in *Chapman I* for finding insufficient service of process. *See Chapman v. U.S. EEOC* ("*Chapman II*"), No. C07-1527 SBA, 2008 WL 782599, at *3 (N.D. Cal. Mar. 24, 2008) (finding that Chapman's service of process on a different Teamsters clerical employee was also insufficient); *see also NGV Gaming, Ltd. v. Upstream Point Molate, LLC*, No. C-04-3955 SC (JCS), 2009 WL 4258550, at *1-3 (N.D. Cal. Nov. 24, 2009) (finding service of process on unincorporated association insufficient because administrative assistant served was neither "a designated agent for service" nor "a person of sufficient authority within the tribe to accept service"); *Bender v. Nat'l Semiconductor Corp.*, No. C 09-01151 JSW, 2009 WL 2912522, at *1-3 (N.D. Cal. Sept. 9, 2009) (finding service of process on "large corporation" insufficient

United States District Court
Northern District of California

where receptionist served "did not advise [process server] that she was authorized to accept service" and there was no evidence she "play[ed] a large role in the overall structure of [the company]").

Judge Freeman's decision in *Allphin v. Peter K. Fitness, LLC*, No. 13-CV-01338-BLF, 2014 WL 2961088 (N.D. Cal. June 30, 2014), does not counsel otherwise. In *Allphin*, the third-party plaintiffs attempted to serve process on the defendant corporation by serving Andrew Jacobs, the corporation's "Executive Chairman." *Id.* at *1. Considering Jacobs's "executive position on the Board of Directors as well as his official duties within the corporation," which included authoring "an annual review of the corporation's financial and operational activities," Judge Freeman found it "reasonable to consider him an officer or general agent that can accept service of process on behalf of the corporation." *Id.* at *2-3. The difference here is manifest. There is no evidence that John Baca is even an employee of Union Defendants, let alone a high-ranking executive board member as Jacobs was in *Allphin*. Indeed, the evidence is that John Baca, unlike Jacobs, "did not perform *any* duties for the [defendant]." John Baca Decl. ¶ 4 (emphasis added).

For these reasons, the Court concludes that Plaintiff has failed to carry his burden of showing that the attempted service on Tom Baca (by serving his son, John Baca) was sufficient. *Brockmeyer*, 383 F.3d at 801.

**C. Rule 4(m)**

Rule 4(m) of the Federal Rules of Civil Procedure generally requires a defendant to be served within 120 days of filing of the plaintiff's complaint. Fed. R. Civ. P. 4(m). As Plaintiff's complaint here was filed on August 5, 2014, the deadline for service of process under Rule 4(m) was December 3, 2014—more than three months ago.

"If a plaintiff fails to effect service within 120 days, the Court has discretion to either dismiss the action without prejudice or direct that service be effected within a specified time." *Bender*, 2009 WL 2912522, at *3 (citing Fed. R. Civ. P. 4(m)). In reaching its decision, the Court applies a two-step analysis under Rule 4(m). *In re Sheehan*, 253 F.3d 507, 512 (9th Cir. 2001).

13

Case No.: 14-CV-03537-LHK
ORDER GRANTING IN PART MOTIONS TO DISMISS, AND QUASHING SERVICE

"First, upon a showing of good cause for the defective service, the court must extend the time period. Second, if there is no good cause, the court has the discretion to dismiss without prejudice or to extend the time period." *Id.* In the absence of a showing of good cause, the Court's discretion to extend the time for service or to dismiss the action without prejudice "is broad." *Id.* at 513. Factors to consider include any "statute of limitations bar, prejudice to the defendant, actual notice of a lawsuit, and eventual service." *Efaw v. Williams*, 473 F.3d 1038, 1041 (9th Cir. 2007) (internal quotation marks omitted). The Court may also consider whether the plaintiff has attempted in good faith to comply with the requirements of Rule 4(m). *Bender*, 2009 WL 2912522, at *4.

In this case, Plaintiff has made no attempt to show "good cause" in his briefing. *See generally* First Opp. at 1-5; Second Opp. at 1-5. Nonetheless, the Court concludes, in its broad discretion, that a brief extension of time for service is warranted. The record shows that Plaintiff attempted to serve Union Defendants multiple times within Rule 4(m)'s 120-day window. As early as September 11, 2014, Plaintiff's counsel asked Bender's Legal Service ("Bender's"), which had been retained as a process server, to serve process on Union Defendants at the 7720 Westridge address in Raytown, Missouri. ECF No. 13-1 Ex. B. Plaintiff's counsel followed up with Bender's via email on September 29, 2014. *Id.* On October 1, 2014, service was attempted on Lawrence at the 7720 Westridge address, which turned out to be a private residence. ECF No. 42-1 Ex. C. This attempt was unsuccessful, and Lawrence was said to be "unknown at the given address." *Id.*; *see also* ECF No. 13 ("Baker Decl.") ¶ 8 (declaration of Plaintiff's counsel, Robert Baker, stating that Bender's had emailed on October 6, 2014, to say that service on Lawrence at the 7720 Westridge address had been unsuccessful and that "the subject was unknown at that address"); ECF No. 13-1 Ex. C (October 6, 2014 email from Bender's). Of course, Lawrence was actually served at the 7720 Westridge address on November 14, 2014, ECF No. 42-1 Ex. D, two-and-a-half weeks prior to the Rule 4(m) deadline.

Even though the Court's ruling today quashes Plaintiff's attempts to serve Union

1   Defendants, Plaintiff has maintained throughout that service on Lawrence was sufficient. *See*

2   Second Opp. at 2. There is no evidence that Plaintiff has done so in bad faith. Nor is there

3   evidence that Union Defendants would be prejudiced further by a brief extension of time to allow

4   Plaintiff to effect service. The prejudice to Plaintiff, on the other hand, would be substantial if

5   Union Defendants were dismissed from the case. That Plaintiff appears to have successfully

6   served Lehigh, the other defendant in this case, which answered Plaintiff's complaint on October

7   3, 2014, ECF No. 9, also weighs in favor of a brief extension. So too does Plaintiff's subsequent

8   attempt to serve Tom Baca, which, although insufficient as well, shows that Plaintiff has been

9   persistent in his efforts at serving Union Defendants.

10   Considering the factors set forth in *Efaw*, as well as Plaintiff's apparent good faith attempts

11   to comply with Rule 4(m), the Court concludes that a thirty-day extension of time to effect service

12   is appropriate. *See Chapman I*, 2007 WL 3231736, at *4 (allowing the plaintiff "30 days from the

13   date of this order to effect proper service on Teamsters"). As the Court has decided to allow

14   Plaintiff a brief extension, the Court DENIES Plaintiff's request in the alternative for an

15   evidentiary hearing. *See* Second Opp. at 5.

## IV.   CONCLUSION

Upon a finding of insufficient service of process, district courts have "discretion to dismiss an action or to quash service." *S.J. v. Issaquah Sch. Dist. No. 411*, 470 F.3d 1288, 1293 (9th Cir. 2006). In general, dismissal of a complaint is inappropriate when there is a "reasonable prospect" that service may yet be obtained. *Chapman I*, 2007 WL 3231736, at *3 (citing *Umbenhauer v. Woog*, 969 F.2d 25, 30 (3d Cir. 1992)); *see also Universal Surface Tech., Inc. v. Sae-A Trading Am. Corp.*, No. CV 10-6972 CASPJWX, 2011 WL 281020, at *3 (C.D. Cal. Jan. 26, 2011) ("Because there is reason to believe that plaintiff could serve [defendant] pursuant to Rule 4(h), the Court finds it appropriate to quash service rather than dismiss the claims against [defendant]."). In light of Plaintiff's apparent good faith efforts to properly serve Union Defendants, and the reasonable chance that Union Defendants can be properly served, the Court

1  elects to quash service rather than dismiss the action as to Union Defendants.

2  Accordingly, the Court hereby GRANTS in part Union Defendants' motions to dismiss
3  and QUASHES service as to Union Defendants. *See Bender*, 2009 WL 2912522, at *4
4  ("grant[ing] in part" defendant's motion to dismiss while "quash[ing]" plaintiff's "attempt at
5  service"). Plaintiff's request for an evidentiary hearing is DENIED. Plaintiff shall have thirty
6  (30) days from the date of this Order to effect service on Union Defendants in accordance with
7  Rule 4(h) of the Federal Rules of Civil Procedure. Service should be effected separately on IBB
8  and Local CLG-100. Proof of service shall be filed no later than seven (7) days after service has
9  been effected. Plaintiff's failure to comply with this Order will result in dismissal of this action
10  against Union Defendants without prejudice. *See Chapman II*, 2008 WL 782599, at *4
11  (dismissing amended complaint as to defendant Teamsters Local 853 "without prejudice" after the
12  plaintiff had failed to perfect service following the thirty-day extension granted in *Chapman I*).
13  **IT IS SO ORDERED.**

15  Dated: March 24, 2015

_____  
LUCY H. KOH  
United States District Judge