UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FRANK RODRIGUEZ,<br><br>        Plaintiff,<br><br>    v.<br><br>INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, IRON SHIP BUILDERS, BLACKSMITHS, FORGERS AND HELPERS UNION, LOCAL CLG-100, et al.,<br><br>        Defendants. | Case No. 14-CV-03537-LHK<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION TO AMEND THE COMPLAINT**<br><br>Re: Dkt. Nos. 88, 97 |

        Plaintiff Frank Rodriguez asserts that Defendant International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers, and Helpers ("IBB") breached IBB's duty of fair representation in connection with a grievance filed after Plaintiff was fired by his employer. ECF No. 1 ("Compl."). Before the Court are two motions: (1) IBB's motion for summary judgment, ECF No. 97; and (2) Plaintiff's motion to amend the complaint, ECF No. 88. The Court finds these matters suitable for decision without oral argument under Civil Local Rule 7-1(b) and hereby VACATES the motion hearing set for December 3, 2015, at 1:30 p.m. The case management conference scheduled for that date and time is also VACATED. Having considered

1

1  the submissions of the parties, the relevant law, and the record in this case, the Court hereby
2  GRANTS IBB's motion for summary judgment and DENIES Plaintiff's motion to amend the
3  complaint.

### I. BACKGROUND

#### A. Factual Background

Until his termination on October 25, 2012, Plaintiff was an employee of Lehigh Southwest Cement Company ("Lehigh"). *See* ECF No. 97-4 (Lehigh Termination Letter to Plaintiff, or "Termination Letter"). As part of his duties for Lehigh, Plaintiff would inspect the heavy equipment used to produce cement and report any safety hazards found therein. ECF No. 97-1 (June 30, 2015 Deposition of Frank Rodriguez, or "Plaintiff Depo."), at 83-84. Plaintiff would also lubricate various pieces of machinery, including a roller press, or "6RP1," and a weigh feeder, or "6WF1." ECF No. 99-1 (January 13, 2015 Testimony of Frank Rodriguez before the Federal Mine Safety and Health Review Commission ("Mine Safety Commission"), or "Plaintiff Mine Safety Testimony") at 24; *id.* (January 1, 2015 Testimony of David Zeidler before the Mine Safety Commission, or "Zeidler Mine Safety Testimony") at 240-41.

In September 2012, the 6WF1 physically broke and failed. Zeidler Mine Safety Testimony at 241. On October 15, 2012, the 6RP1 caught fire and had to be shut down. ECF No. 99-6 Exs. 34-35. Plaintiff and two other employees were faulted for the equipment failures, and Plaintiff was terminated. *See* ECF No. 99-4 (September 3, 2015 Deposition of David Lawrence, or "Lawrence Depo.") at 62; Termination Letter ("The major failures of 6WF1 and 6RP1 due to lack of oil are attributed to [Plaintiff's] performance.").

At the time of his termination, Plaintiff was a member of International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers, and Helpers Local Union CLG-100 ("Local CLG-100"), a local union affiliated with IBB. *See* Plaintiff Depo. at 80. Local CLG-100 and Lehigh had a collective bargaining agreement ("CBA"). ECF No. 97-3 at Union 00007 ("CBA"). IBB was not a party to the CBA. *Id.* The CBA provided for a multi-step grievance

2

Case No. 14-CV-03537-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION TO AMEND THE COMPLAINT

process whereby the union would file a grievance on behalf of a member, the grievance would be presented at a joint labor-management meeting, and then, if not settled, the grievance would move to arbitration. *Id.* at Union 00052. Lehigh also operated in accordance with a progressive discipline policy, with termination usually occurring only after verbal counseling, a written warning, and suspension. ECF No. 97-5.

In October 2012, the local union steward, David Zeidler, contacted David Lawrence to ask for direction in handling a grievance on behalf of Plaintiff. Lawrence Depo. at 12, 19-20. Lawrence was employed by IBB to represent the members of individual local unions, including Local CLG-100, in negotiating grievances and arbitration proceedings. *Id.* at 12, 16. Lawrence advised Zeidler on filing a grievance and on requesting information from Lehigh. ECF No. 97-2 (October 27, 2015 Declaration of David Lawrence, or "Lawrence Decl."). Zeidler believed that Plaintiff was "being scapegoated due to lack of maintenance[,] budget and management failures," ECF No. 97-2 at Union 00401, and filed a grievance alleging wrongful termination and requesting reinstatement, ECF No. 99-6 Ex. 41. Lawrence continued to communicate with Zeidler about Plaintiff's grievance, and investigated Plaintiff's grievance by collecting and reviewing documents from Zeidler and Lehigh. Lawrence Depo. at 54, 102; Lawrence Decl. ¶¶ 7, 10-11, 28.

In December 2012 and January 2013, Lawrence delegated another individual to present Plaintiff's grievance at a joint labor-management meeting, and prepared a set of arguments for that individual to present. *Id.* at 52; Lawrence Decl. ¶¶ 9-10, 12-13. Upon learning that the grievance was not presented as planned, Lawrence negotiated with Lehigh to move the grievance forward in the grievance process, to arbitration. Lawrence Decl. ¶ 14. Additionally, Lawrence spoke with Lehigh in January and February 2013 to request that Lehigh reinstate Plaintiff. ECF No. 97-2 at Union 00386. From February to September 2013, Lawrence communicated with Zeidler and Lehigh to schedule the arbitration of Plaintiff's grievance. Lawrence Decl. ¶¶ 15-27. In January 2014, Lawrence continued his efforts, without success, to negotiate a settlement between Plaintiff and Lehigh. *Id.* ¶ 30; Lawrence Depo. at 100. According to Lawrence, on February 5, 2014,

3

Case No. 14-CV-03537-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION TO AMEND THE COMPLAINT

Plaintiff told Lawrence that Plaintiff had financial difficulty and needed a job. Lawrence Decl. ¶ 32-33; Lawrence Depo. at 130.

On February 6, 2014, Lawrence informed Plaintiff that Lawrence had negotiated a settlement with Lehigh that resolved Plaintiff's grievance. ECF No. 99-6 Ex. 45 (February 6, 2014 Email from Lawrence to Plaintiff, or "Lawrence Settlement Email"). The settlement, which was approved by Local CLG-100, included the following terms: Plaintiff would be returned to work without back pay; Plaintiff would not return as an oiler, but would receive an increase in pay; intervening time would be considered as an agreed to suspension; Plaintiff and the union would execute a last chance agreement; and, prior to being returned to work, Plaintiff would submit to a work fitness evaluation. Lawrence Settlement Email; ECF No. 97-1 at Union 00356; Lawrence Decl. ¶ 35. Given the settlement, Lawrence informed Plaintiff that the case would not proceed to the March 27, 2014 arbitration. *See* Lawrence Settlement Email; ECF No. 99-6 Ex. 43. The Local CLG-100 president urged Plaintiff to take the settlement, and noted that arbitration involved risk while the settlement "is in [Plaintiff's] best interest and will undoubtedly serve [Plaintiff] well with the increase in pay rate!" ECF No. 97-1 at Union 00356. However, Plaintiff responded to Lawrence that Plaintiff was prepared for and wanted to proceed to arbitration, and rejected the settlement. ECF No. 99-6 Exs. 46-47. Lawrence informed Plaintiff that the arbitration had been cancelled and the "grievance has been resolved with an offer of your return to work." ECF No. 99-6 Ex. 48.

**B. Procedural History**

On August 5, 2014, Plaintiff filed suit against Lehigh, IBB, and Local CLG-100. ECF No. 1. In his complaint, Plaintiff asserts a cause of action for breach of collective bargaining agreement against Lehigh and a cause of action for breach of duty of fair representation against IBB and Local CLG-100. *Id.* ¶¶ 11-19. On March 24, 2015, the Court found that Plaintiff had failed to properly serve IBB and Local CLG-100 and quashed service as to those defendants. ECF No. 50, at 16. However, the Court extended the time for service. *Id.* On April 29, 2015, the

4

Court granted Plaintiff's motion to dismiss Local CLG-100 without prejudice following Plaintiff's continued difficulty in effecting service. ECF No. 60. On May 13, 2015, the Court dismissed Lehigh with prejudice following Lehigh's settlement with Plaintiff, leaving IBB as the only defendant remaining in the case. ECF No. 65.

In a joint case management statement filed on September 30, 2015, Plaintiff informed the Court that Plaintiff planned to file a motion to amend the complaint "to include allegations to confront the anticipated motion for summary judgment to be filed by the IBB." ECF No. 83, at 1. At the case management conference and in the accompanying case management order, the Court noted that the deadline to amend pleadings was March 28, 2015 and the fact discovery cutoff was September 3, 2015. The Court ordered Plaintiff to file a motion to amend no later than October 12, 2015 and ordered the parties to address whether the motion to amend would be dispositive of the anticipated motion for summary judgment. ECF No. 85, at 2. On October 12, 2015, Plaintiff filed the motion to amend the complaint. ECF No. 88 ("MTA"). On October 26, 2015, IBB opposed the motion to amend. ECF No. 89. Plaintiff replied on November 2, 2015. ECF No. 98.

After Plaintiff filed the motion to amend, IBB filed a motion for summary judgment on October 29, 2015. ECF No. 93. The Court struck IBB's motion for summary judgment on October 30, 2015 because IBB filed an oversized brief in violation of Civil Local Rules 7-3 and 7-4. ECF No. 95. IBB filed a renewed motion for summary judgment, in compliance with the local rules, on November 3, 2015. ECF No. 97 ("MSJ"). Plaintiff opposed the motion for summary judgment on November 17, 2015. ECF No. 98 ("Opp."). IBB replied on November 24, 2015. ECF No. 100 ("Reply").

**II.   LEGAL STANDARD**

Summary judgment is appropriate if, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party, there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986). At the summary judgment stage, the Court

5
Case No. 14-CV-03537-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION TO AMEND THE COMPLAINT

"does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559-60 (2006).  A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.*

The moving party bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323.  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party, but on an issue for which the opposing party will have the burden of proof at trial, the party moving for summary judgment need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325; *accord Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  Once the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.

## III.   DISCUSSION

### A.   IBB's Motion for Summary Judgment

IBB moves for summary judgment on two grounds: (1) Plaintiff fails to produce evidence that IBB breached the duty of fair representation; and (2) IBB owed no duty of fair representation to Plaintiff because IBB was not a party to the collective bargaining agreement between Local CLG-100 and Lehigh.  MSJ at 15-25.  Because the Court concludes below that summary judgment is warranted in IBB's favor on the first ground, the Court need not address IBB's remaining argument.

Where a union is the "exclusive bargaining representative of the employees in [a]

bargaining unit," the union has a duty to "fairly represent all of those employees, both in its collective bargaining with [the employer], . . . and in its enforcement of the resulting collective bargaining agreement." *Carballo v. Comcast, Inc.*, No. C-13-5572 MMC, 2015 WL 106372, at *2 (N.D. Cal. Jan. 7, 2015) (alterations and ellipsis in original) (quoting *Vaca v. Sipes*, 386 U.S. 171, 177 (1967)). In order to determine whether a union breaches its duty of fair representation, the Ninth Circuit follows a two-step analysis. *Moore v. Bechtel Power Corp.*, 840 F.2d 634, 636 (9th Cir.1988). First, the Court must decide whether the alleged union misconduct "involved the union's judgment, or whether it was 'procedural or ministerial.'" *Id.* (quoting *Peterson v. Kennedy*, 771 F.2d 1244, 1254 (9th Cir. 1985)). Second, if the conduct was procedural or ministerial, then the union breaches its duty of fair representation if the conduct was "arbitrary, discriminatory, or in bad faith." *Id.* However, if the conduct involved the union's judgment, then "the plaintiff may prevail only if the union's conduct was discriminatory or in bad faith." *Id.* Thus, to find breach, the Court "must determine either that the union conduct at issue is a discriminatory or bad faith exercise of judgment, or is an arbitrary (meaning wholly irrational, inexplicable, or unintentional) action that substantially injured an employee." *Beck v. United Food & Commercial Workers Union, Local 99*, 506 F.3d 874, 880 (9th Cir. 2007).

Plaintiff claims that IBB breached the duty of fair representation because IBB settled Plaintiff's meritorious grievance on terms detrimental to Plaintiff's interest and without Plaintiff's consent, and IBB did not take the grievance to an arbitration hearing. Opp. at 2, 15. IBB counters that these actions were exercises of judgment and thus must be given deference. MSJ at 20-22. IBB also argues that Plaintiff offers no evidence of bad faith, or of discriminatory or arbitrary conduct. *Id.* at 17-20. Further, IBB asserts that Plaintiff had no right to reject the settlement or compel an arbitration hearing. *Id.* at 16-17.

At the first step of the two-step analysis, the Court agrees with IBB that IBB's alleged misconduct involved an exercise of judgment. Although "differentiating a ministerial task from a judgment call is not always easily accomplished," the Ninth Circuit has previously concluded that

a union exercises judgment when the union determines how to proceed with a grievance. *See Wellman v. Writers Guild of Am., W., Inc.*, 146 F.3d 666, 671 (9th Cir. 1998) ("[I]n general, a union's decision about how best to handle a grievance also is a matter of its judgment."); *Burkevich v. Air Line Pilots Ass'n, Int'l*, 894 F.2d 346, 349-50 (9th Cir. 1990) (finding that a union's decision to settle the group claim and refuse to litigate the individual claims was an act of judgment). By contrast, acts that the Ninth Circuit has considered ministerial or procedural include (1) a failure to file a meritorious grievance within the established time limit, *Dutrisac v. Caterpillar Tractor Co.*, 749 F.2d 1270, 1272-73 (9th Cir. 1983); (2) an unexplained failure to pursue a grievance after the grievance was submitted to arbitration by a joint labor-management group, *Herman v. United Building BHD of Carpenters and Jointers of America, Local No. 971*, 60 F.3d 1375, 1380-81 (9th Cir. 1995); (3) an inexplicable failure to consider a strong substantive argument in favor of the employee, *Peters v. Burlington Northern R.R. Co.*, 931 F.2d 534, 539 (9th Cir. 1990); and (4) failure to notify an employer that an employee was a union steward, *Galindo v. Stoody Co.*, 793 F.2d 1502, 1514 (9th Cir. 1986).

In this case, it is uncontroverted that IBB, through its employee Lawrence, reached a settlement with Lehigh that returned Plaintiff to work at a higher wage, after Lawrence investigated Plaintiff's grievance, fulfilled the ministerial duties relating to filing the grievance, and negotiated with Lehigh on Plaintiff's behalf. *See* Lawrence Depo.; Lawrence Decl. IBB and Local CLG-100 approved the settlement, and Lawrence told Plaintiff that proceeding to arbitration involved risk, ECF No. 99-6 Ex. 44, while the settlement provided Plaintiff with Plaintiff's desired return to work, ECF No. 97-1 at Union 00362. IBB's conduct reflects that IBB's settlement of Plaintiff's grievance was a "decision about how best to handle [Plaintiff's] grievance," and thus constituted an act of judgment. *See Wellman*, 146 F.3d at 671.

Plaintiff does not dispute the evidence showing that IBB pursued Plaintiff's grievance or that IBB made a decision to settle the grievance. Rather, in opposition, Plaintiff argues that his grievance was meritorious and should have received a more favorable settlement. Opp. at 15-18.

8
Case No. 14-CV-03537-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION TO AMEND THE COMPLAINT

However, whether the grievance is meritorious, alone, does not determine whether IBB's conduct involved judgment or was instead procedural or ministerial. Even if Plaintiff's grievance were meritorious, there is no indication that IBB inexplicably failed to take action on Plaintiff's grievance and thus that IBB's conduct was procedural or ministerial. *See Peters*, 931 F.2d at 539 (inexplicable failure to consider a substantive argument in employee's favor was ministerial); *Herman*, 60 F.3d at 1380-81 (unexplained inaction on the employee's grievance, after the grievance was submitted to arbitration, was ministerial). Rather, uncontroverted evidence demonstrates that IBB pursued Plaintiff's grievance by investigating and then negotiating a settlement. *See* Lawrence Depo. at 54, 102; Lawrence Decl. ¶¶ 7, 10-11, 28; Lawrence Settlement Email. Moreover, whether IBB exercised judgment does not depend on whether Plaintiff agrees with the result of that judgment. *See Beck*, 506 F.3d at 879 (a union's conduct "constitutes an exercise of judgment entitled to deference even when the union's 'judgments are ultimately wrong.'" (quoting *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 45-46 (1998))). Consequently, "[IBB's] decision to settle [Plaintiff's] grievance with [the employer], rather than to continue to pursue arbitration, involved an exercise of judgment concerning the likelihood of success in arbitration versus the value of [the employer's] settlement offer. . . .The strategic decision to settle the dispute rather than press forward with litigation was not merely procedural . . . ." *Reyes v. Pac. Bell*, 21 F.3d 1115 (9th Cir. 1994) (table).

Because IBB's decision to settle Plaintiff's grievance before arbitration involved the exercise of judgment, at the second step of the two-step analysis the Court must find that IBB acted with a discriminatory motive or in bad faith in order to find breach of the duty of fair representation. To show that IBB's conduct was discriminatory, Plaintiff must offer "substantial evidence of discrimination that is intentional, severe, and unrelated to legitimate union objectives." *Beck*, 506 F.3d at 880 (quoting *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Employees of Am. v. Lockridge*, 403 U.S. 274, 301 (1971)). To show that IBB acted in bad faith, Plaintiff must adduce "substantial evidence of fraud, deceitful action or dishonest conduct." *Id.*

1  (quoting *Lockridge*, 403 U.S. at 299).

2  Reviewing the record and Plaintiff's arguments, the Court concludes that Plaintiff does not raise a genuine dispute of material fact that IBB's decision to settle Plaintiff's grievance prior to arbitration was discriminatory or in bad faith. In fact, Plaintiff concedes that IBB's conduct was not discriminatory or in bad faith by failing to argue the point in Plaintiff's opposition. *See generally* Opp. Nor does Plaintiff even allege discriminatory conduct by IBB, or any acts of fraud or deceit, in the complaint. *See generally* Compl.

Additionally, as discussed above, the evidence shows that IBB, through Lawrence, took action to effectively pursue Plaintiff's grievance and achieve a return to work for Plaintiff, at a higher pay rate. Plaintiff does not point to, and the evidence does not reveal, "substantial evidence" of bad faith or discrimination in Lawrence's actions. *See Anderson*, 477 U.S. at 250 (noting that the nonmoving party must identify "specific facts showing that there is a genuine issue for trial"); *see also* Plaintiff Depo. at 201-02 (admitting that Plaintiff had not heard Lawrence make any negative comments about Plaintiff). Moreover, Plaintiff's disapproval of the settlement negotiated by IBB is insufficient, on its own, to demonstrate bad faith or discriminatory conduct. *Moore*, 840 F.2d at 637 ("Nor does a disagreement between a union and an employee over a grievance, standing alone, constitute evidence of bad faith, even when the employee's grievance is meritorious."). Given that IBB's conduct involved judgment and that Plaintiff offers no evidence that IBB's conduct was discriminatory or in bad faith, IBB is entitled to summary judgment that IBB did not breach the duty of fair representation. *See Moore*, 840 F.2d at 636 ("If it is a union's judgment that is in question, as it is in this case, the plaintiff may prevail only if the union's conduct was discriminatory or in bad faith. Arbitrariness alone would not be enough.").

Alternatively, even if the Court were to find that IBB's decision to settle before arbitration was ministerial and not an act of judgment, the Court concludes that no reasonable jury could find that IBB's conduct was arbitrary. A union's conduct is arbitrary "only when it is irrational, when it is without a rational basis or explanation." *Beck*, 506 F.3d at 879. "[M]ere negligence is not

arbitrariness. The union must have acted in 'reckless disregard' of the employee's rights." *Moore*, 840 F.2d at 636. For example, courts have found arbitrary conduct where (1) a union fails to explain any basis for failing to research the collective bargaining agreement, *Peters*, 931 F.2d at 541; (2) a union inexplicably stopped pursuing a grievance after a joint labor-management board decided to submit the grievance to arbitration, *Herman*, 60 F.3d at 1380; and (3) a union failed to file a grievance on time, *Dutrisac*, 749 F.2d at 1274.

Plaintiff claims that IBB acted in an arbitrary manner because IBB settled Plaintiff's grievance in a perfunctory manner without Plaintiff's consent, and again emphasizes that Plaintiff's grievance was "facially meritorious." Opp. at 2, 15, 17. Plaintiff also disputes the terms of the settlement because, Plaintiff says, the last chance agreement leaves Plaintiff without future union protection and the return to work was illusory since Lehigh had ordered Plaintiff to be terminated. Opp. at 20-23. IBB responds that, even if the decision to settle were somehow mistaken, IBB's conduct was rational because IBB had reasons to settle. Reply at 7.

The Court agrees with IBB. A decision to settle is not arbitrary merely because the settlement is not the best possible settlement; rather, to be arbitrary, the decision to settle must be "unintentional, irrational or wholly inexplicable." *Beck*, 506 F.3d at 880. In this case, Lawrence made the decision to settle after spending over a year investigating Plaintiff's grievance, advising Zeidler on filing the grievance, preparing to present the grievance, and scheduling the arbitration. Lawrence Decl.¶ 7, 9-28; Lawrence Depo. at 54, 102. Additionally, Lawrence informed Plaintiff of the reasons for seeking and accepting a settlement: proceeding to arbitration involved risk and time, ECF No. 99-6 Ex. 44, while the settlement provided Plaintiff with Plaintiff's desired return to work, ECF No. 97-1 at Union 00362. The settlement also increased Plaintiff's pay. ECF No. 97-1 at Union 00356. Moreover, uncontroverted evidence shows that Plaintiff told Lawrence, before the settlement that Plaintiff had financial difficulty and needed a job. Lawrence Decl. ¶ 32-33; Lawrence Depo. at 130. While Plaintiff believes that IBB could have won a more favorable result at arbitration, Plaintiff fails to present any argument or evidence that IBB's decision not to

11
Case No. 14-CV-03537-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION TO AMEND THE COMPLAINT

proceed to arbitration was "wholly inexplicable." *See* Opp. at 21. Thus, there is no evidence that Lawrence treated Plaintiff's grievance in an arbitrary or perfunctory fashion. *See Vaca*, 386 U.S. at 191, 195 (finding union did not act in a perfunctory manner when the union attempted to gather evidence to prove the union member's case, attempted to secure other work for the union member, and processed the grievance through multiple steps of the grievance process); *see also Shane v Greyhound Lines, Inc.*, 868 F.2d 1057, 1061 (9th Cir. 1989) (a union's decision to accept a settlement over the grievants' contemporaneous objections was not arbitrary).

At bottom, Plaintiff claims that IBB acted arbitrarily solely because IBB decided to settle the case without Plaintiff's consent before arbitration. However, "a union does not breach its duty of fair representation . . . merely because it settled the grievance short of arbitration." *Vaca*, 386 U.S. at 191-92 (1967); *accord Moore*, 840 F.2d at 637 ("Unions do not have an absolute duty to take every grievance to arbitration."). Additionally, the individual employee has no absolute right to reject a settlement. *Shane*, 868 F.2d at 1061 ("Unions are free to negotiate and accept settlements even without the grievants' approval."). Finally, a "breach of the duty of fair representation is not established merely by proof that the underlying grievance was meritorious." *Vaca*, 386 U.S. at 195. Thus, given that IBB's decision to settle was not discriminatory, arbitrary, or in bad faith, IBB is entitled to summary judgment that IBB did not breach the duty of fair representation.

### B. Plaintiff's Motion to Amend the Complaint

Plaintiff's motion to amend the complaint would not alter the outcome of this motion for summary judgment. Plaintiff's motion to amend does not address IBB's breach of the duty of fair representation but rather adds allegations to show that IBB, who was not a signatory to the CBA with Lehigh, owed Plaintiff a duty of fair representation. MTA at 5-7; ECF No. 88-2 (Proposed First Amended Complaint). Given that the Court finds above that IBB is entitled to summary judgment on the issue of whether IBB committed a breach of the duty of fair representation, the Court need not reach the question of whether IBB owed Plaintiff a duty of fair representation.

12
Case No. 14-CV-03537-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION TO AMEND THE COMPLAINT

Accordingly, Plaintiff's proposed amendments would be futile, and Plaintiff's motion to amend is DENIED. *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (a district court may deny leave to amend a complaint due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment").[1]

### IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS IBB's motion for summary judgment and DENIES Plaintiff's motion to amend the complaint.

**IT IS SO ORDERED.**

Dated:  December 1, 2015

_____
LUCY H. KOH
United States District Judge

---

[1] Moreover, an amendment of the complaint now, almost three months after the close of fact discovery on September 3, 2015 and more than eight months after the March 28, 2015 deadline to amend pleadings, would cause undue delay and unduly prejudice IBB. *See Leadsinger, Inc.*, 512 F.3d at 532. Furthermore, although the Court's October 7, 2015 case management order set a deadline to file the instant motion for leave to amend, the order did not render Plaintiff's request timely or excuse Plaintiff's delay.  *See* ECF No. 85.