1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

FRANK RODRIGUEZ,

        Plaintiff,

    v.

INTERNATIONAL BROTHERHOOD OF
BOILERMAKERS, IRON SHIP
BUILDERS, BLACKSMITHS, FORGERS
AND HELPERS UNION, LOCAL CLG-
100, et al.,

        Defendants.

Case No. 14-CV-03537-LHK

**ORDER DENYING DEFENDANT'S
MOTION FOR RULE 11 SANCTIONS**

Re: Dkt. No. 101

      Defendant International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths,

Forgers, and Helpers ("IBB") moves to sanction Plaintiff Frank Rodriguez ("Plaintiff") and

Plaintiff's attorney under Federal Rule of Civil Procedure 11.  ECF No. 101.  Having considered

the submissions of the parties, the relevant law, and the record in this case, the Court hereby

DENIES IBB's motion for Rule 11 sanctions.

I.       **BACKGROUND**

    A.  **Factual Background**

      Until his termination on October 25, 2012, Plaintiff was an employee of Lehigh Southwest

1

United States District Court
Northern District of California

1   Cement Company ("Lehigh").  *See* ECF No. 1 ("Compl.") ¶ 3; ECF No. 97-4 (Lehigh Termination

2   Letter to Plaintiff, or "Termination Letter").  As part of his duties for Lehigh, Plaintiff would

3   inspect the heavy equipment used to produce cement and report any safety hazards found therein.

4   ECF No. 97-1 (June 30, 2015 Deposition of Frank Rodriguez, or "Plaintiff Depo.") at 83–84.

5   Plaintiff would also lubricate various pieces of machinery, including a roller press, or "6RP1," and

6   a weigh feeder, or "6WF1." ECF No. 99-1 (January 13, 2015 Testimony of Frank Rodriguez

7   before the Federal Mine Safety and Health Review Commission ("Mine Safety Commission"), or

8   "Plaintiff Mine Safety Testimony") at 24; *id.* (January 1, 2015 Testimony of David Zeidler before

9   the Mine Safety Commission, or "Zeidler Mine Safety Testimony") at 240–41.

10      In September 2012, the 6WF1 physically broke and failed.  Zeidler Mine Safety Testimony

11   at 241.  On October 15, 2012, the 6RP1 caught fire and had to be shut down.  ECF No. 99-6 Exs.

12   34–35.  Plaintiff and two other employees were faulted for the equipment failures, and Plaintiff

13   was terminated.  *See* ECF No. 99-4 (September 3, 2015 Deposition of David Lawrence, or

14   "Lawrence Depo.") at 62; Termination Letter ("The major failures of 6WF1 and 6RP1 due to lack

15   of oil are attributed to [Plaintiff's] performance.").

16      At the time of his termination, Plaintiff was a member of International Brotherhood of

17   Boilermakers, Iron Ship Builders, Blacksmiths, Forgers, and Helpers Local Union CLG-100

18   ("Local CLG-100"), a local union affiliated with IBB.  *See* Compl. ¶ 2; Plaintiff Depo. at 80.

19   Local CLG-100 and Lehigh had a collective bargaining agreement ("CBA").  ECF No. 97-3 at

20   Union 00007 ("CBA").  IBB was not a party to the CBA.  *Id.*  The CBA provided for a multi-step

21   grievance process whereby the union would file a grievance on behalf of a member, the grievance

22   would be presented at a joint labor-management meeting, and then, if not settled, the grievance

23   would move to arbitration.  *Id.* at Union 00052.  Lehigh also operated in accordance with a

24   progressive discipline policy, with termination usually occurring only after verbal counseling, a

25   written warning, and suspension.  Compl. ¶ 5; ECF No. 97-5.

26      In October 2012, the local union steward, David Zeidler, contacted David Lawrence to ask

27   for direction in handling a grievance on behalf of Plaintiff.  Lawrence Depo. at 12, 19-20.

28

2

1    Lawrence was employed by IBB to represent the members of individual local unions, including

2    Local CLG-100, in negotiating grievances and arbitration proceedings.  *Id.* at 12, 16.  Zeidler

3    believed that Plaintiff was "being scapegoated due to lack of maintenance[,] budget and

4    management failures," ECF No. 97-2 at Union 00401, and filed a grievance alleging wrongful

5    termination and requesting reinstatement, ECF No. 99-6 Ex. 41.  Lawrence continued to

6    communicate with Zeidler about Plaintiff's grievance, and investigated Plaintiff's grievance by

7    collecting and reviewing documents from Zeidler and Lehigh.  Lawrence Depo. at 54, 102;

8    Lawrence Decl. ¶¶ 7, 10–11, 28.

9         In December 2012 and January 2013, Lawrence delegated another individual to present

10   Plaintiff's grievance at a joint labor-management meeting, and prepared a set of arguments for that

11   individual to present.  Lawrence Depo. at 52; Lawrence Decl. ¶¶ 9–10, 12–13.  Upon learning that

12   the grievance was not presented as planned, Lawrence negotiated with Lehigh to move the

13   grievance forward in the grievance process to arbitration.  Lawrence Decl. ¶ 14.  Additionally,

14   Lawrence spoke with Lehigh in January and February 2013 to request that Lehigh reinstate

15   Plaintiff.  ECF No. 97-2 at Union 00386.  From February to September 2013, Lawrence

16   communicated with Zeidler and Lehigh to schedule the arbitration of Plaintiff's grievance.

17   Lawrence Decl. ¶¶ 15–27.  In January 2014, Lawrence continued his efforts, without success, to

18   negotiate a settlement between Plaintiff and Lehigh.  *Id.* ¶ 30; Lawrence Depo. at 100.  According

19   to Lawrence, on February 5, 2014, Plaintiff told Lawrence that Plaintiff had financial difficulty

20   and needed a job.  Lawrence Decl. ¶ 32–33; Lawrence Depo. at 130.

21        On February 6, 2014, Lawrence informed Plaintiff that Lawrence had negotiated a

22   settlement with Lehigh that resolved Plaintiff's grievance.  ECF No. 99-6 Ex. 45 (February 6,

23   2014 Email from Lawrence to Plaintiff, or "Lawrence Settlement Email").  The settlement, which

24   was approved by Local CLG-100, included the following terms: Plaintiff would be returned to

25   work without back pay; Plaintiff would not return as an oiler, but would receive an increase in pay

26   of $7 per hour; intervening time would be considered as an agreed to suspension; Plaintiff and the

27   union would execute a last chance agreement; and, prior to being returned to work, Plaintiff would

28

3

submit to a work fitness evaluation.  Lawrence Settlement Email; ECF No. 97-1 at Union 00356, 00360; Lawrence Decl. ¶ 35.  Given the settlement, Lawrence informed Plaintiff that the case would not proceed to the March 27, 2014 arbitration.  *See* Lawrence Settlement Email; ECF No. 99-6 Ex. 43.  Plaintiff responded to Lawrence that Plaintiff was prepared for and wanted to proceed to arbitration, and rejected the settlement.  ECF No. 99-6 Exs. 46–47.  Lawrence informed Plaintiff that the arbitration had been cancelled and the "grievance has been resolved with an offer of your return to work."  ECF No. 99-6 Ex. 48.

### B.  Procedural History

On August 5, 2014, Plaintiff filed suit against Lehigh, IBB, and Local CLG-100.  ECF No. 1.  In his complaint, Plaintiff asserts a cause of action for breach of the collective bargaining agreement against Lehigh and a cause of action for breach of the duty of fair representation against IBB and Local CLG-100.  *Id.* ¶¶ 11–19.  On March 24, 2015, the Court found that Plaintiff had failed to properly serve IBB and Local CLG-100 and quashed service as to those defendants.  ECF No. 50 at 16.  However, the Court extended the time for service.  *Id.*  On April 29, 2015, the Court granted Plaintiff's motion to dismiss Local CLG-100 without prejudice following Plaintiff's continued difficulty in effecting service.  ECF No. 60.  On May 13, 2015, the Court dismissed Lehigh with prejudice following Lehigh's settlement with Plaintiff, leaving IBB as the only defendant remaining in the case.  ECF No. 65.

On December 1, 2015, the Court granted summary judgment to IBB and denied Plaintiff's motion to amend the complaint.  ECF No. 103.  The Court concluded that no reasonable jury could find that IBB breached the duty of fair representation when IBB settled Plaintiff's grievance prior to arbitration.  Because summary judgment was warranted on this basis, the Court did not need to reach whether IBB owed Plaintiff a duty of fair representation.

After the completion of briefing on the motion for summary judgment, but before the Court granted summary judgment, IBB filed a motion for Rule 11 sanctions against Plaintiff.  ECF No. 101 ("Mot").  On December 9, 2015, Plaintiff opposed IBB's motion for Rule 11 sanctions.  ECF No. 105 ("Opp.").  IBB replied on December 16, 2015.  ECF No. 106 ("Reply").  Plaintiff

Case No. 14-CV-03537-LHK
ORDER DENYING DEFENDANT'S MOTION FOR RULE 11 SANCTIONS

United States District Court
Northern District of California

1  filed an objection to IBB's Reply on December 23, 2015, ECF No. 107, and a corrected objection

2  on December 24, 2015, ECF No. 109.

3  **II.      LEGAL STANDARD**

4          Rule 11 sanctions are appropriate "when a filing is frivolous, legally unreasonable, or

5  without factual foundation, or is brought for an improper purpose." *Estate of Blue v. Cty. of L.A.*,

6  120 F.3d 982, 985 (9th Cir. 1997).  Accordingly, Rule 11 sanctions may be imposed: "[(1)] where

7  a litigant makes a 'frivolous filing,' that is where he files a pleading or other paper which no

8  competent attorney could believe was well grounded in fact and warranted by law; and [(2)] where

9  a litigant files a pleading or paper for an 'improper purpose,' such as personal or economic

10  harassment." *Greenberg v. Sala*, 822 F.2d 882, 885 (9th Cir. 1987).

11          A frivolous filing is one that is "*both* baseless *and* made without a reasonable and

12  competent inquiry." *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 434 (9th Cir. 1996).  Thus,

13  when a complaint is challenged under Rule 11, a district court must conduct a two-prong inquiry

14  to determine whether the complaint is frivolous: "(1) whether the complaint is legally or factually

15  baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and

16  competent inquiry before signing and filing it." *Holgate v. Baldwin,* 425 F.3d 671, 676 (9th Cir.

17  2005); *see also Conn v. Borjorquez*, 967 F.2d 1418, 1421 (9th Cir. 1992) (noting that courts look

18  to whether "a reasonable basis for the position exist[ed] in both law and in fact at the time the

19  position [was] adopted").  The "baseless" and "reasonable inquiry" requirements are conjunctive,

20  not disjunctive.  Therefore, "[a]n attorney may not be sanctioned for a [filing] that is not well-

21  founded, so long as she conducted a reasonable inquiry." *In re Keegan*, 78 F.3d at 434.  By the

22  same token, an attorney cannot "be sanctioned for a complaint which is well-founded, solely

23  because she failed to conduct a reasonable inquiry." *Id.* (emphasis omitted).

24          When Rule 11 sanctions are party-initiated, the burden is on the moving party to

25  demonstrate why sanctions are justified.  *See Tom Growney Equip., Inc. v. Shelley Irrigation Dev.,*

26  *Inc.*, 834 F.2d 833, 837 (9th Cir. 1987).  The Ninth Circuit has held that Rule 11 sanctions are "an

27  extraordinary remedy, one to be exercised with extreme caution." *Operating Eng'rs Pension*

28

United States District Court
Northern District of California

Case No. 14-CV-03537-LHK
ORDER DENYING DEFENDANT'S MOTION FOR RULE 11 SANCTIONS

1   *Trust v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988).  Sanctions are reserved for "rare and

2   exceptional case[s] where the action is clearly frivolous, legally unreasonable or without legal

3   foundation, or brought for an improper purpose."  *Id.* at 1344.  "Rule 11 must not be construed so

4   as to conflict with the primary duty of an attorney to represent his or her client zealously."  *Id.*

5   **III.   DISCUSSION**

6       **A.  Plaintiff's Objection to IBB's Reply Evidence**

7           As a preliminary matter, the Court addresses Plaintiff's objection to IBB's Reply evidence.

8   The Court's Civil Local Rules authorize the filing of an objection to "new evidence" that has been

9   submitted in a reply.  *See* Civ. L.R. 7-3(d)(1).  In Plaintiff's objection, Plaintiff contends that

10  IBB's motion for sanctions did not argue that the complaint lacked a factual basis for the

11  allegation that "[t]he conduct of [IBB] was perfunctory, arbitrary, capricious, and in bad faith."

12  ECF No. 109 at 5–6; *see also* Compl. ¶ 16.  Accordingly, Plaintiff seeks to strike from IBB's

13  Reply all evidence and argument related to whether this allegation lacked a factual basis.  ECF No.

14  109 at 6 (seeking to strike pages 4–5, lines 3–13 and the entirety of page 8, lines 1–26).

15          In the motion for sanctions, IBB claimed that "Plaintiff's deposition . . . demonstrates the

16  complete absence of any allegation of bad faith or discrimination."  Mot. at 16.  IBB also argued

17  that "Plaintiff has continuously pursued a claim for breach of the duty of fair representation . . .

18  without factual foundation" and that "Plaintiff's claims are frivolous and without factual support

19  when considering applicable, well-settled precedent."  *Id.* at 14, 17.  While IBB's Reply elaborates

20  upon these points, the Reply does not present "new evidence."  Plaintiff's objection is DENIED.

21      **B.  IBB's Motion for Rule 11 Sanctions**

22          Rule 11 sanctions are appropriate when a filing is legally or factually baseless, or is

23  brought for an improper purpose.  Fed. R. Civ. P. 11(b)–(c).  IBB moves for Rule 11 sanctions

24  against Plaintiff and Plaintiff's attorney on two of these bases.  First, IBB argues that the

25  complaint is legally baseless because (1) IBB did not breach the duty of fair representation and (2)

26  IBB did not owe Plaintiff a duty of fair representation.  *See id.* 11(b)(2).  Second, IBB argues that

27  the complaint is factually baseless.  *See id.* 11(b)(3).  IBB does not argue that Plaintiff brought the

28

*United States District Court*
*Northern District of California*

6

complaint for an improper purpose.  *See id.* 11(b)(1).

The Court first addresses whether Plaintiff's complaint is legally baseless, and then considers whether Plaintiff's complaint is factually baseless.  Because the Court concludes below that the complaint is neither legally nor factually baseless, the Court need not determine whether counsel conducted a reasonable inquiry.  *See In re Keegan*, 78 F.3d at 434 (noting a filing is frivolous only when the filing is "*both* baseless *and* made without a reasonable competent inquiry").

### 1.  Plaintiff's Complaint is Not Legally Baseless

To be legally frivolous, a claim must not be "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2).  It must be "patently clear that a claim has absolutely no chance of success under the existing precedents, and . . . no reasonable argument can be advanced to extend, modify or reverse the law as it stands."  *United States v. Stringfellow*, 911 F.2d 225, 226 (9th Cir. 1990) (per curiam) (quoting *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir. 1985)).  "The key question in assessing frivolousness is whether a complaint states an arguable claim—not whether the pleader is correct in his perception of the law."  *Woodrum v. Woodward Cty., Okla.*, 866 F.2d 1121, 1127 (9th Cir. 1989).

IBB argues that Plaintiff's complaint is not "warranted by existing law" for two reasons. First, IBB argues that it is legally frivolous for Plaintiff to allege that IBB breached the duty of fair representation.  Mot. at 14–17; Reply at 5–7.  Second, IBB argues that it is legally frivolous for Plaintiff to allege that IBB even owed Plaintiff a duty of fair representation.  Mot. at 18–22; Reply at 9.  The Court addresses these arguments in turn.

### a.  Plaintiff's Allegation that IBB Breached the Duty of Fair Representation is not Legally Baseless

IBB first argues that it is legally frivolous to argue that IBB breached the duty of fair representation.  In order to determine whether a union breaches its duty of fair representation, the Ninth Circuit follows a two-step analysis.  *Moore v. Bechtel Power Corp.*, 840 F.2d 634, 636 (9th

Case No. 14-CV-03537-LHK
ORDER DENYING DEFENDANT'S MOTION FOR RULE 11 SANCTIONS

Cir. 1988).  First, the Court must decide whether the alleged union misconduct "involved the

union's judgment, or whether it was 'procedural or ministerial.'"  *Id.* (quoting *Peterson v.*

*Kennedy*, 771 F.2d 1244, 1254 (9th Cir. 1985)).  Second, if the conduct was procedural or

ministerial, then the union breaches its duty of fair representation if the conduct was "arbitrary,

discriminatory, or in bad faith."  *Id.*  However, if the conduct involved the union's judgment, then

"the plaintiff may prevail only if the union's conduct was discriminatory or in bad faith."  *Id.*

Thus, to find breach, the Court "must determine either that the union conduct at issue is a

discriminatory or bad faith exercise of judgment, or is an arbitrary (meaning wholly irrational,

inexplicable, or unintentional) action that substantially injured an employee."  *Beck v. United*

*Food & Commercial Workers Union, Local 99*, 506 F.3d 874, 880 (9th Cir. 2007).

In the instant case, the complaint alleged: "Plaintiff had a meritorious case . . . and, it is

more likely than not that Plaintiff would have prevailed had Plaintiff's matter proceeded to

arbitration.  The conduct of [IBB] was perfunctory, arbitrary, capricious, and in bad faith, and

constituted a breach of [IBB's] duty to Plaintiff of fair representation."  *See* Compl. ¶ 16.  In other

words, according to Plaintiff, IBB's conduct was ministerial and the arbitrary treatment of

Plaintiff's grievance constituted a breach of the duty of fair representation.

IBB argues that Plaintiff's allegations on the breach of duty of fair representation are

legally frivolous for two reasons.  First, IBB argues that Plaintiff's allegation that IBB's conduct

was ministerial ignores a "clear line of decisions in the Ninth Circuit that demonstrate a union

exercises judgment when settling a grievance."  Reply at 9–10.  Moreover, because the instant

case "falls under the 'union's judgment,'" IBB argues that IBB could not have breached the duty

of fair representation because Plaintiff put forward no evidence of bad faith or discrimination.

Mot. at 15–16.  Second, IBB argues that "Plaintiff's Complaint (and Plaintiff during his

deposition) essentially argue[d] that Plaintiff had a right to arbitration and he could 'reject' a

settlement negotiated between a union and employer.  Such arguments have been consistently

rejected by [c]ourts for multiple decades."  *Id.* at 14.

Plaintiff counters that Plaintiff's deposition is irrelevant to whether Plaintiff's counsel

1    presented plausible legal claims.  Opp. at 10.  Additionally, Plaintiff argues that it was not

2    frivolous to argue that IBB's conduct was a ministerial act rather than an act of judgment, and thus

3    that IBB breached the duty of fair representation by acting arbitrarily.

4         The Court agrees with Plaintiff that the asserted deficiencies in the complaint do not rise to

5    the level of sanctions, especially considering that Rule 11 is an "extraordinary remedy . . . to be

6    exercised with extreme caution."  *See Conn*, 967 F.2d at 1421.  First, the views of Plaintiff,

7    expressed in a deposition, do not control whether the claims in the complaint are "warranted by

8    existing law."  Plaintiff is not a lawyer and did not craft the complaint.  Additionally, "[c]onduct

9    in depositions, discovery meetings of counsel, oral representations at hearings . . . do not fall

10   within the ambit of Rule 11."  *See Christian v. Mattel, Inc.*, 286 F.3d 1118, 1131 (9th Cir. 2002).

11   Thus, sanctions are not warranted based upon Plaintiff's deposition.

12        Second, the Court finds that Plaintiff's position was not so unreasonable as to be

13   considered frivolous.  As Plaintiff points out, "differentiating a ministerial task from a judgment

14   call is not always easily accomplished."  Opp. at 11 (quoting *Peters v. Burlington N. R.R. Co.*, 931

15   F.2d 534, 539 (9th Cir. 1990)).  In *Peters*, the Ninth Circuit held:

16        [T]he labels "ministerial act" and "act of judgment" represent not absolute
         categories without relation to one another but opposing points on a continuum that
17        broadly attempts to separate discretionary decision making from inexplicable
         conduct.  At one end of this continuum are procedural imperatives over which a
18        union rarely agonizes by virtue of the fact that they do not necessitate the exercise
         of much judgment.  At the other end are actual, rational attempts on the part of a
19        union to properly interpret a collective bargaining agreement or otherwise handle a
         grievance.
20
     *Peters*, 931 F.2d at 539–540.  IBB focuses on the final sentence of the above quote from *Peters* to
21
     contend that any attempt to "handle a grievance" is an act of judgment.  Reply at 7; *see also* Mot.
22
     at 15 ("The present case clearly falls under the 'union's judgement' [sic] step because it involves
23
     settlement of a grievance.").  However, IBB ignores additional language from *Peters*:
24
25        In between these extremes, however, lie situations in which a particular union
         might give the most cursory consideration to or even unaccountably avoid a
26        substantive dilemma.  In these situations, it makes little sense to allow a union to
         hide behind the mantle of "judgment" and "discretion" when the evidence suggests
27        that it actually exercised neither.  In short, a union's unexplained failure to consider
         a meritorious substantive argument in favor of an employee signals that the process

28   Case No. 14-CV-03537-LHK
     ORDER DENYING DEFENDANT'S MOTION FOR RULE 11 SANCTIONS

9

United States District Court
Northern District of California

1  has broken down and has much more in common with a ministerial failure than
with a negligent decision.

2  *Peters*, 931 F.2d at 540 (internal citation omitted).  Accordingly, the Ninth Circuit has held that a

3  union's handling of a grievance is a ministerial act, not an act of judgment, when the union

4  processes a meritorious grievance in a perfunctory manner or fails to provide an explanation for

5  the union's decision not to pursue a meritorious argument.  *See Slevira v. W. Sugar Co.*, 200 F.3d

6  1218, 1221 (9th Cir. 2000) (noting that union should consider meritorious arguments and provide

7  an explanation for any decision not to pursue meritorious arguments);  *Wellman v. Writers Guild*

8  *of Am., W., Inc.*, 146 F.3d 666, 671 (9th Cir. 1998) ("[I]n general, a union's decision about how

9  best to handle a grievance also is a matter of its judgment.  But to be sure that the union is

10  employing some principled way of screening the meritorious grievances from the meritless ones,

11  we have held that a union must conduct some minimal investigation of grievances brought to its

12  attention." (citation and internal quotation marks omitted)); *see also Herman v. United*

13  *Brotherhood of Carpenters & Jointers of Am., Local Union No. 971*, 60 F.3d 1375, 1380–81 (9th

14  Cir. 1995) (finding union acted arbitrarily when the union inexplicably failed to pursue a

15  grievance after the grievance was submitted to arbitration).

16          In the instant case, Plaintiff offered a number of reasons why IBB's conduct could be

17  considered ministerial, and arbitrary, even though the case involved handling a grievance.  The

18  complaint alleged that "Plaintiff had a meritorious case . . . and, it is more likely than not that

19  Plaintiff would have prevailed had Plaintiff's matter proceeded to arbitration.  The conduct of

20  [IBB] was perfunctory, arbitrary, capricious, and in bad faith, and constituted a breach of [IBB's]

21  duty to Plaintiff of fair representation."  *See* Compl. ¶ 16.  Plaintiff also alleged that Lawrence did

22  not respond to Plaintiff's attempts to communicate after Plaintiff rejected the settlement.  *Id.* ¶ 10.

23  Additionally, at summary judgment, Plaintiff presented evidence that the grievance was

24  meritorious; that Plaintiff did not agree with Lawrence that it was reasonable to settle; and that the

25  settlement included terms that Plaintiff found objectionable.  *See* ECF No. 98 (Plaintiff's

26  Opposition to IBB's Motion for Summary Judgment), at 17-18.  In light of these facts, and given

27  that "differentiating a ministerial task from a judgment call is not always easily accomplished," a

28
Case No. 14-CV-03537-LHK
ORDER DENYING DEFENDANT'S MOTION FOR RULE 11 SANCTIONS

1  competent attorney could have argued that IBB's refusal to pursue Plaintiff's meritorious

2  grievance to arbitration was perfunctory and inexplicable, and breached IBB's duty of fair

3  representation.  *See Slevira*, 200 F.3d at 1221 (9th Cir. 2000) (noting that union's handling of a

4  grievance may be a ministerial act if the union acted in a perfunctory or inexplicable manner);

5  *Herman*, 60 F.3d at 1380–81 (finding union acted arbitrarily when the union inexplicably failed to

6  pursue a grievance).

7       The Court is not persuaded otherwise by *Truesdell v. S. Cal. Permanente Med. Grp.*, 209

8  F.R.D. 169 (C.D. Cal. 2002), a case on which IBB relies to argue that courts have issued sanctions

9  in similar circumstances.[1]  *See* Mot. at 17.  In *Truesdell*, the court sanctioned the plaintiff's

10  counsel for frivolously arguing that the result and procedures of an arbitration proceeding

11  concerning the plaintiff's wrongful termination grievance breached the union's duty of fair

12  representation.  In *Truesdell*, however, the plaintiff (1) relied on "a wholly unreasonable and

13  specious interpretation of two provisions of the [collective bargaining agreement]"; (2) repeatedly

14  used "wholly inapposite authority"; (3) "sought a form of relief to which [p]laintiff would never

15  have been entitled"; and (4) presented no authority that the union did not exercise judgment in

16  failing to make some particular argument or present particular evidence at the arbitration of the

17  plaintiff's grievance.  *Truesdell*, 209 F.R.D. at 176–77.  Unlike the *Truesdell* plaintiff, Plaintiff

18  here did not unreasonably interpret the CBA (or offer any interpretation of the CBA), nor seek

19  relief to which Plaintiff was not entitled.  Plaintiff did not cite to "wholly inapposite authority."

20  Instead, Plaintiff cited relevant authority—namely *Peters* and *Herman*.  Further, as the Court

21  detailed above, Plaintiff offered facts and argument to suggest that IBB did not exercise judgment.

22

23  [1] IBB also relies on *Thornton v. Acme Steel Co.*, No. 88 C 3658, 1989 WL 88497, at *2 (N.D. Ill.
24  Aug. 3, 1989).  In that case, the plaintiff's counsel admitted that he lacked direct evidence of a
breach, even though the Seventh Circuit required "substantial evidence of intentional misconduct"
to show a breach of the duty of fair representation.  *Thornton*, 1989 WL 88497, at *2.  In the Ninth
25  Circuit, however, a plaintiff may prove breach of the duty of fair representation by showing that
the union's ministerial conduct was "irrational . . . without a rational basis or explanation" and
26  "substantially injure[d] the union member."  *Beck*, 506 F.3d at 879–80.  Accordingly, in the
instant case, Plaintiff did not need to show "substantial evidence of intentional misconduct."
27  Further, Plaintiff never conceded that Plaintiff could not meet the standard to show a breach of the
duty of fair representation.  Thus, the Court finds *Thornton* inapposite.

28
Case No. 14-CV-03537-LHK
ORDER DENYING DEFENDANT'S MOTION FOR RULE 11 SANCTIONS

United States District Court
Northern District of California

1  Accordingly, *Truesdell* does not persuade the Court that sanctions are warranted.

2          However, the Court agrees with IBB that Plaintiff's argument is weak.  At summary

3  judgment, the Court found that IBB's alleged misconduct involved an exercise of judgment and

4  that "no reasonable jury could find that IBB's conduct was arbitrary."  ECF No. 103 at 10.  The

5  Court determined that, although Plaintiff was unhappy with the settlement, Lawrence conducted a

6  sufficient investigation into Plaintiff's grievance and provided rational reasons for settlement,

7  including that proceeding to arbitration involved risk while the settlement returned Plaintiff to

8  work with an increase in hourly pay.  *Id.* at 8–9.  Additionally, the Court concluded that Plaintiff

9  incorrectly claimed that Plaintiff had a right to arbitrate.  However, "the granting of a summary

10  judgment against the pleader is not dispositive of the issue of sanctions."  *Zaldivar v. City of L.A.*,

11  780 F.2d 823, 830 (9th Cir. 1986), *abrogated on other grounds by Cooter & Gell v. Hartmarx*

12  *Corp.*, 496 U.S. 384 (1990); *see also Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d

13  1531, 1542 (9th Cir. 1986) ("[R]ule 11 should not impose the risk of sanctions in the event that the

14  court later decides that the lawyer was wrong.").  Although the Court did not find Plaintiff's

15  position persuasive at summary judgment, Plaintiff's position is within the realm of

16  reasonableness contemplated by Rule 11.  *See Woodrum*, 866 F.2d at 1127 (noting that complaint

17  must state an "arguable claim" to avoid sanctions).

18          **b.  Plaintiff's Allegation that IBB Owed Plaintiff a Duty of Fair Representation is**
   **Not Legally Baseless**

19

20          The Court turns to IBB's second argument that Plaintiff's complaint is legally baseless.

21  According to IBB, no reasonable attorney could believe that IBB owed Plaintiff a duty of fair

representation.  A union owes a duty of fair representation to employees when the union is the

22  employees' "exclusive collective bargaining representative."  *Carballo v. Comcast, Inc.*, No. C-

23  13-5572 MMC, 2015 WL 106372, at *2 (N.D. Cal. Jan. 7, 2015) (quoting *Vaca v. Sipes*, 386 U.S.

24  171, 177 (1967)).  "The duty is not imposed on an international union simply because it is the

25  'parent' of the designated representative . . . ."  *See Borg v. Greyhound Lines, Inc.*, No. C 83-4827

26  RHS, 1984 WL 14332, at *3 (N.D. Cal. July 1, 1984).  Thus, "international unions are routinely

27

28
                                                12

dismissed from duty of fair representation suits when they are neither the recognized collective bargaining representative nor a party to the contract."  *Id.*  However, an international union may owe a duty of fair representation directly to members of affiliated local unions where "actions of the international [union] directly affect the collective bargaining rights of union members or supplant the autonomy of the local [union]."  *Pile Drivers, Divers, Carpenters, Bridge, Wharf & Dock Builders Local Union 34 v. N. Cal. Carpenters Reg'l Council*, 992 F. Supp. 1138, 1144 (N.D. Cal. 1997) (citing *Alexander v. Int'l Union of Operating. Eng'rs*, 624 F.2d 1235, 1240–41 (5th Cir. 1980)); *see also Blesedell v. Chillicothe Telephone Co.*, No. 2:13-cv-451, 2013 WL 6096329, at *5 (S.D. Ohio Nov. 19, 2013) ("[A]n international union's duty of fair representation has been recognized only where the plaintiffs alleged facts indicating that the international union contractually assumed or functionally usurped the role of the local union as exclusive bargaining representative.").

IBB argues that suing IBB for breach of the duty of fair representation is frivolous because "Plaintiff cannot maintain a duty of fair representation action against a union that is not a party to a collective bargaining agreement."  Mot. at 18.  In response, Plaintiff points to *Pile Drivers*, 992 F. Supp. 1138, and argues that IBB owed a duty of fair representation to Plaintiff because IBB "usurped the grievance process" from Local CLG-100.  Opp. at 12.

The Court concludes that Plaintiff's argument was not legally frivolous.  *Pile Drivers* indicates that an international union may owe a local union member a duty of fair representation, even when the international union is not a signatory to the collective bargaining agreement, if the international union "supplant[s] the autonomy of the local."  *Pile Drivers*, 992 F. Supp. at 1144. Although *Pile Drivers* does not explain precisely what actions "supplant the autonomy of the local," the Court need not decide the merits of Plaintiff's claim.  *See Cooter & Gell*, 496 U.S. at 396 ("[T]he imposition of a Rule 11 sanction is not a judgment on the merits of an action.  Rather, it requires the determination of . . . whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate.").

Here, the complaint alleges that Lawrence, an IBB employee, negotiated the settlement

Case No. 14-CV-03537-LHK
ORDER DENYING DEFENDANT'S MOTION FOR RULE 11 SANCTIONS

United States District Court
Northern District of California

United States District Court
Northern District of California

1    with Lehigh.  Compl. ¶ 10.  At summary judgment, undisputed evidence showed that Lawrence

2    took the lead in handling Plaintiff's grievance.  For example, Lawrence investigated Plaintiff's

3    grievance by collecting and reviewing documents from Zeidler and Lehigh.  Lawrence Depo. at

4    54, 102; Lawrence Decl. ¶¶ 7, 10–11, 28.  Lawrence, not Local CLG-100, negotiated directly with

5    Lehigh to settle the grievance.  Lawrence Decl. ¶¶ 14, 30; ECF No. 97-2 at Union 00386;

6    Lawrence Depo. at 100; Lawrence Settlement Email.  Plaintiff's allegations are sufficient to

7    provide an "arguable basis" for a competent attorney to assert that the Court should apply *Pile*

8    *Drivers* and find that IBB owed Plaintiff a duty of fair representation because IBB usurped the

9    autonomy of Local CLG-100.  *See Borg*, 1984 WL 14332, at *3–*4 (finding no duty of fair

10    representation when international union was not a party to the agreement *and* was not involved

11    with respect to plaintiff's grievance).

12        In the Reply, IBB does not attempt to distinguish or undermine Plaintiff's reliance on *Pile*

13    *Drivers*.  Further, IBB cites no law indicating that, under the facts of the instant case, it is

14    "patently clear that [Plaintiff's] claim has absolutely no chance of success under existing

15    precedents, and . . . no reasonable argument can be advanced to extend, modify or reverse the law

16    as it stands."  *Stringfellow*, 911 F.2d at 226.  Rather, *Pile Drivers* suggests that Plaintiff's claim is

17    "warranted by existing law or by a nonfrivolous argument for extending [or] modifying" existing

18    law.  Fed. R. Civ. P. 11.  Accordingly, it was not legally frivolous for Plaintiff to argue that IBB

19    owed Plaintiff a duty of fair representation even though IBB was not a signatory to the CBA.

20        IBB additionally argues that sanctions are warranted because Plaintiff has "maintained his

21    action *despite dismissing the local union from the lawsuit*."  Mot. at 19 (emphasis added).

22    However, IBB cites to no Ninth Circuit case holding that a Plaintiff can not maintain an action

23    against an international union simply because the local union has been dismissed from the lawsuit,

24    and the Court has not found any in its own research.  Local CLG-100 was dismissed from this

25    action because of Plaintiff's failure to effect proper service, not because Local CLG-100 did not

26    breach its duty of fair representation.  Additionally, Plaintiff seeks to hold IBB directly—not

27    vicariously—liable for breaching the duty of fair representation.  Again, IBB fails to show that it

28

Case No. 14-CV-03537-LHK
ORDER DENYING DEFENDANT'S MOTION FOR RULE 11 SANCTIONS

is "patently clear that [Plaintiff's] claim has absolutely no chance of success under existing precedents, and . . . no reasonable argument can be advanced to extend, modify or reverse the law as it stands." *Stringfellow*, 911 F.2d at 226.  Accordingly, the Court concludes that Plaintiff's complaint was not legally frivolous.

### 2.  Plaintiff's Complaint is Not Factually Baseless

Because the Court finds above that Plaintiff's complaint is not legally baseless, the Court turns to IBB's contention that the complaint is factually baseless.  IBB contends that Plaintiff failed to provide factual support for the allegation that IBB's conduct was "perfunctory, arbitrary, and in bad faith."  Mot. at 4.  Plaintiff counters that counsel conducted a reasonable inquiry into IBB's conduct and that there was adequate factual support for the allegation in the complaint.

The Court agrees that the challenged allegation is not so lacking in factual foundation as to warrant sanctions.  In arguing that no evidence supports Plaintiff's allegation that IBB's conduct was "perfunctory, arbitrary, and in bad faith," IBB relies on the legal conclusion that IBB's conduct was insufficient to breach the duty of fair representation.  IBB also points to Plaintiff's deposition, in which Plaintiff stated that he was unaware of any union employee making negative comments about Plaintiff.  However, a claim is factually frivolous only if "the allegations and other factual contentions *entirely lack evidentiary support*." *Stiglich v. Contra Costa Cty. Bd. of Supervisors*, 1997 WL 22410, at *8 (9th Cir. 1997) (emphasis added).  In the instant case, the complaint alleges that Plaintiff was terminated without cause; that IBB negotiated a settlement on Plaintiff's behalf with terms that Plaintiff found objectionable; that IBB refused to take Plaintiff's meritorious grievance to arbitration; and that Plaintiff's attempts to communicate with his representative after Plaintiff rejected the settlement went unanswered.  Compl. ¶ 10.  IBB does not claim that any of these allegations are false.  These allegations show that Plaintiff's "perfunctory, arbitrary, and in bad faith" allegation does not "*entirely* lack evidentiary support." *See Stiglich*, 1997 WL 22410, at *8 (emphasis added).  Rather, based on these allegations, it was not frivolous for Plaintiff to infer that IBB acted in a perfunctory, arbitrary, and bad faith manner. *See Golden Gate Way, LLC v. Stewart*, C09-04458, 2011 WL 3667496, at *4 (N.D. Cal. Aug. 22, 2011)

15

Case No. 14-CV-03537-LHK
ORDER DENYING DEFENDANT'S MOTION FOR RULE 11 SANCTIONS

(noting that "an inference, reasonably drawn from the undisputed circumstantial evidence, suffices to provide evidentiary support for [the plaintiffs'] allegation for purposes of Rule 11").

IBB counters that, at summary judgment, the Court found that no reasonable jury would agree with Plaintiff's interpretation of the evidence, and that Plaintiff had conceded bad faith at summary judgment. Mot. at 4. However, a claim that has "*some* plausible basis, [even] a weak one," is sufficient to avoid sanctions under Rule 11. *United Nat. Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1117 (9th Cir. 2001). As discussed above, when filing the complaint, Plaintiff's "perfunctory, arbitrary, and in bad faith" allegation did not entirely lack evidentiary support. Thus, "[a]lthough [Plaintiff] ultimately failed to adduce substantial support for the complaint, the suit was not so baseless that sanctions ought to be imposed." *See Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1472 (9th Cir. 1987) ("While these facts do not suffice to create a genuine issue for trial, we cannot say that the complaint is so lacking in plausibility as to make [the plaintiff's attorney's] decision to sign and certify it subject to sanctions under Fed. R. Civ. P. 11.").

## IV.     CONCLUSION

For the foregoing reasons, the Court DENIES IBB's motion for Rule 11 sanctions.

**IT IS SO ORDERED.**

Dated:  March 10, 2016

_____
LUCY H. KOH
United States District Judge

Case No. 14-CV-03537-LHK
ORDER DENYING DEFENDANT'S MOTION FOR RULE 11 SANCTIONS

United States District Court
Northern District of California